IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**HARRY L. BECKETT,**                       :
       **Petitioner**                       :   **CIVIL NO. 1:CV-03-1716**
       **v.**                       :   **(Judge Rambo)**
**KENNETH D. KYLER,** *et al.*,              :
       **Respondents**                       :

## **M E M O R A N D U M**

**I.**     **Introduction**

      Petitioner, Harry L. Beckett, an inmate at the State Correctional Institution in Huntingdon, Pennsylvania, commenced this action *pro se* with a petition for writ of habeas corpus filed pursuant to the provisions of 28 U.S.C. § 2254. (Doc. 1.) In accordance with *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000) (requiring district courts to provide notice to *pro se* habeas petitioners of the implications of 28 U.S.C. § 2244(b) before ruling on their petitions), an order (Doc. 35) was issued advising Petitioner that: (1) he could have the document ruled on as filed, that is, as a § 2254 petition for writ of habeas corpus and heard as such, but lose his ability to file a second or successive petition absent certification by the court of appeals, or (2) withdraw his petition and file one, all inclusive § 2254 petition within the one-year statute of limitations period prescribed by 28 U.S.C. § 2244(d). Petitioner responded by submitting a Notice of Election (Doc. 36) in which he opted to have his petition considered as filed. The parties have briefed the issues, and the matter is ripe for disposition. For the reasons that follow, the petition will be denied.

**II.        Background**

Unless otherwise noted, the following facts are extracted from the trial court's opinion and order denying Petitioner's post-trial motions (Doc. 39, Ex. H).[1] In the summer of 1991, Petitioner, Lewis Manor, and Isaac Williams traveled from Georgia to Harrisburg, Pennsylvania, ostensibly to pick up two vehicles for Petitioner's girlfriend, Ursula Gore. However, when the three men arrived in the Harrisburg area, Petitioner purchased two knives at a local K-Mart and they proceeded to the apartment of Samuel Gore, Ursula Gore's estranged husband. The trio walked to the apartment building and approached the entrance, led by Petitioner. Petitioner knocked on the door, spoke to the man that answered, and entered the apartment. While Manor and Williams waited for Petitioner outside, they heard loud noises, talking and an argument. When they determined the source of the noise, they entered the apartment.

Upon entering, they saw Petitioner struggling with Samuel Gore. Manor and Williams ran out of the apartment, and they returned to their car. Shortly thereafter, Petitioner joined them, and the three men drove to a car wash, where Petitioner removed his bloody clothes. Then, the trio returned to Ursula Gore's apartment in Pembroke, Georgia.

That evening, Samuel Gore was discovered and transported to a local hospital. The victim never regained consciousness, and medical staff was unable to

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by the State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U. S. C. § 2254(e)(1).

save his life.  An autopsy the next day revealed that the victim had died of multiple stab wounds.

Based upon the crime scene investigation and other evidence, the police focused their investigation on Ursula Gore and her connections in Georgia. Ultimately, Petitioner, Ursula Gore, Williams, and Manor were implicated in the murder of Samuel Gore, and all four were arrested and charged with criminal homicide and conspiracy.  Manor struck a deal with prosecutors, receiving less than life imprisonment in exchange for testimony and cooperation against Petitioner and Ursula Gore.  Williams' trial was severed from the others, and Petitioner and Ursula Gore were tried together.[2]  On November 23, 1992, Petitioner was convicted by a jury in the Dauphin County, Pennsylvania, Court of Common Pleas of first degree murder and criminal conspiracy.  Petitioner's post-trial motions were denied (*id.*, Ex. H), the Pennsylvania Superior Court affirmed the conviction and sentence (*id.*, Ex. J), and the Pennsylvania Supreme Court denied a petition for allowance of appeal (*id.*, Ex. L).

On July 24, 1996, Petitioner filed a *pro se* petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C. S. § 9541 *et seq.* Subsequently, the PCRA court appointed counsel to Petitioner, and counsel filed a supplemental PCRA petition on February 18, 1997.  The supplemental PCRA was dismissed on April 9, 1997, and Petitioner appealed to the Superior Court.

Thereafter, Petitioner filed *pro se* motions to dismiss appointed counsel in the PCRA court and in the Pennsylvania Superior Court.  On September 2, 1998,

---

[2]Petitioner's trial counsel, Joshua Lock, filed an omnibus pretrial motion (Doc. 39, Ex. F) seeking, *inter alia*, severance of his trial from the others.  However, the motion was denied on all relief.

the Pennsylvania Superior Court vacated the PCRA court's dismissal of the petition and remanded the case for a hearing. On remand, Petitioner was granted leave to amend his petition. (Doc. 39, Ex. Z at 11.) After a hearing, the PCRA court denied relief (Doc. 39, Ex. AA). On June 27, 2002, the Pennsylvania Superior Court affirmed (Doc. 39, Ex. CC), and on April 9, 2003 the Pennsylvania Supreme Court denied allowance of appeal (Doc. 39, Ex. GG). The instant petition ensued. Respondent claims that Petitioner has procedurally defaulted three of his four claims and, in the alternative, all of Petitioner's claims are meritless.

**III.     Discussion**

**A.  Procedural Default**

Petitioner raises the following issues in his habeas petition:

1) The trial court erred when it denied his motion to sever his trial from the trial of Ursula Gore, in violation of Petitioner's Fifth and Fourteenth Amendment rights;

2) The trial court violated Petitioner's Fifth and Fourteenth Amendment rights in dismissing a juror for cause because the juror stated in *voir dire* that it would be "extremely difficult" to impose the death penalty;

3) The trial court's jury charge was legally deficient in several aspects, in violation of Petitioner's Fifth and Fourteenth Amendment rights;

4) Prosecutorial misconduct, in violation of Petitioner's Fourth, Fifth and Fourteenth Amendment rights, in conveying a false impression that the lead prosecution witness, Lewis Manor, would "be facing a lengthy jail sentence." (Doc. 1-1 at 4-5.)

Respondents claim that Petitioner has procedurally defaulted on the first three grounds for relief in his habeas petition. The court agrees as to issues one and three only. "A federal court may not grant a writ of habeas corpus unless (1) 'the

4

applicant has exhausted the remedies available in the courts of the state . . . .' " *Henderson v. Frank*, 155 F.3d 159, 164 (3d Cir. 1998) (citing 28 U.S.C. § 2254(b)(1)).  The exhaustion requirement is satisfied when the state courts have had an opportunity to review and correct alleged constitutional violations.  *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1230 (3d Cir. 1992).  The exhaustion requirement is not a mere formality.  It serves the interests of comity between the federal and state systems, by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights.  *Crews v. Horn*, 360 F.3d 146, 151 (3d Cir. 2004).

        The habeas corpus petitioner bears the burden of establishing exhaustion of state court remedies.  *McMahon v. Fulcomer*, 821 F.2d 934, 940 (3d Cir. 1987).  The threshold inquiry in the exhaustion analysis is whether the claims asserted in the habeas corpus petition have been "fairly presented" to the state courts.  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Fair presentation requires that the "substantial equivalent" of both the legal theory and the facts supporting the federal claim are submitted to the state courts, and the same method of legal analysis applied in the federal courts must be available to the state courts.  *Evans*, 959 F. 2d at 1230; *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).  In addition, to satisfy exhaustion, the state court must be put on notice that a federal claim is being asserted.  *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).  The exhaustion requirement is satisfied if the petitioner's claims are either presented to the state courts directly on appeal from the judgment of sentence, or through a collateral proceeding, such as a petition under the PCRA, and it is not necessary to present federal claims to state courts *both* on direct appeal *and* in a PCRA proceeding.

*Evans*, 959 F.2d at 1230-31; *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984).

Applying these legal principles to the instant matter, the court concludes that Petitioner has failed to exhaust issues one and three (refusal to sever and deficient jury charge) presented in his petition. Although both of these issues were raised and argued in Petitioner's direct appeal[3] (Doc. 39, Ex. G), they were raised and discussed exclusively in terms of state law. Further, none of the issues in the instant petition were raised in the amended PCRA.[4] Thus, the court finds that

---

[3]The issues were set forth as follows:

1) Was the denial of [Petitioner's] motion for severance made in advance of trial and renewed following jury selection and during trial improper constituting reversible error . . .

4) Were the instructions on the law provided to the jury at the completion of the trial incomplete and/or erroneous [in several aspects]. (Doc. 39-1 at 14-15.)

[4]The PCRA presented the following issues:

1) Whether the Commonwealth committed prosecutorial misconduct by conveying to [Petitioner's] jury the false impression that the chief witness against him, also charged with murder and conspiracy, would be facing a lengthy jail sentence of "less than life imprisonment" in exchange for his cooperation and testimony when in fact it dismissed all charges against that chief witness after trial, thereby violating the Brady rule;

2) Whether, in the alternative, trial and PCRA counsel were Constitutionally ineffective for failing to raise and preserve the issue of whether the Commonwealth failed to disclose the actual "deal" with its primary witness and failed to correct that [witness'] false testimony, who testified that his only expectation was leniency at sentencing when, in fact, just months after [Petitioner's] conviction the Commonwealth dismissed the murder charges and set him free;

3) Whether trial counsel was ineffective for failing to introduce expert evidence in support of the defense position that [Petitioner] was physically incapable of stabbing the victim to death, as the Commonwealth alleged, because of a serious,

(continued...)

Petitioner failed to adequately put the state court on notice that a federal claim was being asserted, *Keller*, 251 F.3d at 413, and he has failed to fairly present these federal Constitutional claims for state court review. *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000). Therefore, issues one and three in the present petition are unexhausted.

If Petitioner could still present his unexhausted federal claims (issues one and three) to the state courts, the instant petition would be dismissed without prejudice so that he could pursue these claims through a new PCRA petition. However, the time for presenting the issues to the state court in another PCRA has expired. *See* 42 Pa.C.S.A. § 9545(b)(1). The Pennsylvania state courts have made it clear that the time limitations set forth in the PCRA are jurisdictional. *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214 (1999); *Commonwealth v. Banks*, 726 A.2d 374, 376 (Pa. 1999); *Commonwealth v. Peterkin*, 722 A.2d 638, 641 (Pa. 1998). "Unlike a statute of limitations, a jurisdictional time limitation is not subject to equitable principles such as tolling except as provided by statute. Thus, the filing period is only extended as permitted; in the case of the PCRA, the time limitations are extended upon satisfaction of the exceptions found in § 9545(b)(1)(i)-(iii). . . ." *Fahy*, 737 A.2d at 222. Therefore, an otherwise untimely petition may nevertheless be considered if the petition alleges, and the petitioner proves, that:

---

[4](...continued)
    pre-existing medical condition; and

4) Whether trial counsel was ineffective for failing to interview and call character witnesses on behalf of [Petitioner], which witnesses were made known to counsel, many of whom were present at trial, and others were available on telephone notice, thereby depriving the jury of evidence of [Petitioner's] innocence. (Doc. 39, Ex. BB at 11.)

>   (i) The failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
>   (ii) The facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
>   (iii) The right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time provided in this section has been held by that court to apply retroactively.

§ 9545(b)(1)(i)-(iii).  Petitioner has not raised and proven any of the enumerated grounds, and the court is unaware of any that would be available to Petitioner.

>   As provided by the Third Circuit:
>
>   When a claim is not exhausted because it has not been "fairly presented" to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is "an absence of available State corrective process." In such cases, however, applicants are considered to have procedurally defaulted their claims, and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default.

*McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) (internal citations omitted); *see also, Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001).  Petitioner has not alleged cause or prejudice, nor has he demonstrated that a lack of review by the court will constitute a fundamental miscarriage of justice in regard to issues one and three.[5]

---

[5]In order to demonstrate a fundamental miscarriage of justice, Petitioner must show that he is actually innocent of the crime by presenting new evidence of innocence. *Schlup v. Delo*, 513 U.S. 298 (1995).  Although Petitioner presented evidence of a physical infirmity that he alleges would have precluded him from stabbing the victim, this evidence relates to a claim of ineffective assistance of counsel which he raised in his state court appeals.  Moreover, it is unlikely that this

(continued...)

Consequently, Petitioner is precluded from pursuing federal habeas corpus relief in regard to issues one and three, and the Court will limit review of the merits to issues two and four.

### B. Scope of Habeas Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), revised the standard of review for cases challenging state convictions pursuant to 28 U.S.C. § 2254. *Dickerson v. Vaughn*, 90 F.3d 87, 89 (3d Cir. 1996). Section 2254(d), as amended, states as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[6]

The "contrary to" provision contained in § (d)(1) is evaluated as follows:

> [T]he inquiry must be whether the Supreme Court has established a rule that determines the outcome of the petition. Accordingly, we adopt *O'Brien's* holding that "to obtain relief at this stage, a habeas petitioner must show

---

[5](...continued)
evidence would be deemed newly discovered in the context of this case.

[6]Under this standard, Petitioner's request for *de novo* review of his claims (*See* Doc. 17 at 1) is inappropriate in the context of a § 2254 habeas petition.

> that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." In other words, it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome.

*Matteo v. Superintendent, SCI -Albion*, 171 F.3d 877, 888 (3d Cir. 1999) (quoting *O'Brien v. Dubois*, 145 F.3d 16, 24-25 (1st Cir. 1998)).  The appropriate standard for the "unreasonable application" clause is

> whether the state court's application of Supreme Court precedent was objectively reasonable.  The federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that *cannot reasonably be justified under existing Supreme Court precedent*. . . . [T]he primary significance of the phrase "as determined by the Supreme Court of the United States" is that federal courts may not grant habeas corpus relief based on the state court's failure to adhere to the precedent of a lower federal court on an issue that the Supreme Court has not addressed.  Thus, in certain cases it may be appropriate to consider the decisions of inferior federal courts as helpful amplifications of Supreme Court precedent.

*Matteo*, 171 F.3d at 889-90 (emphasis added).

Section 2254(e)(1) contains the presumption of correctness provision that greatly heightens the degree of deference paid to a state court's findings of fact. The burden is on the Petitioner to rebut the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Ultimately, after application of the standards set forth above to Petitioner' remaining issues – 2 and 4 – it cannot be said that the state courts have come to an improper conclusion.

10

### C. Issue 2 - Dismissal of Juror for Cause

Petitioner claims that the trial court erroneously "excused [a juror] in this capital case, for cause, merely because it would be 'extremely difficult' for that juror to impose the death penalty." (Doc. 1 at 4.) During *voire dire*, the jurors were asked whether they would be able to apply the law and, if appropriate, impose the death penalty in the case. One juror ("Juror No. 25") was excused for cause, based upon answers to the questions. Although this juror initially stated that it would be extremely difficult to impose the death penalty, on further questioning he ultimately conceded that he could not imagine himself accepting responsibility for reaching a death verdict under the circumstances of the case, despite the fact that the circumstances might warrant a death penalty under the law. (Doc. 39, Ex. J at 8-9.)

The Supreme Court has held that "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment . . . is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 424 (1985); *see also Morgan v. Illinois*, 504 U.S. 719, 728 (1992). In reviewing the issue, the Pennsylvania Superior Court found that the "extremely thorough colloquy . . . showed that Juror No. 25 held deep-seated philosophical and moral beliefs consistent with an **inability to ever impose** the death penalty." (Doc. 39, Ex. J at 9) (emphasis added). On review, this court concludes that the standard applied by the Pennsylvania Superior Court is consistent with Supreme Court precedent on this issue, and the decision to strike the juror for cause is well-supported by the evidence in the record. Accordingly, Petitioner has failed to demonstrate that the decision was contrary to

Federal law as decided by the Supreme Court or that the decision is an unreasonable application of the facts, and the claim will be denied.

### D.  Issue 4 - Prosecutorial Misconduct

Petitioner also claims that the Commonwealth violated its obligation to disclose evidence of a secret deal with the prosecution's chief witness (Manor), in violation of its obligation to make such disclosure under the doctrine established in *Brady v. Maryland*, 373 U.S. 83 (1963).  In *Brady*, the Supreme Court held that "the suppression by the prosecution of requested evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. To establish a *Brady* violation, three factors must coalesce: (1) the evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either wilfully or inadvertently; and (3) prejudice must have ensued.  *Stickler v. Greene*, 527 U.S. 263, 281-282 (1999).

Petitioner claims that Manor had an undisclosed deal with the prosecution, the deal could have been used to impeach Manor's testimony, and the jury would have discounted Manor's testimony if it had known of the secret deal. There is no dispute that Manor struck a deal with the prosecution in exchange for his cooperation in the prosecution of Petitioner, Gore and Williams.  However, the terms of the agreement (Manor would spend less than life in prison) were fully disclosed to Petitioner.  It is also undisputed that the charges against Manor were dismissed pursuant to a prosecution motion for a *nolle prosequi*, several months after the conclusion of trials of Petitioner, Gore and Williams.  Nevertheless, Petitioner has

not referenced anything in the record, and the court is not aware of anything in the more than 2,200 pages of exhibits in this case, to support the existence of the purported undisclosed deal.

To the contrary, Manor consistently testified that he was only promised that he would spend less than life in prison, and Petitioner concedes that this agreement was fully disclosed. Further, it was not until the trials concluded that the prosecution was convinced that Manor was not implicated in wrongdoing, thereby prompting the *nolle prosequi* motion. Ultimately, Petitioner has failed to fulfill his burden that the state court denial of relief on this issue was contrary to Supreme Court precedent or an unreasonable interpretation of the facts, and this claim will be denied.

**IV.      Conclusion**

Issues one and three are denied as the Petitioner has procedurally defaulted on these claims. As for issues 2 and 4, Petitioner has failed to meet his burden and these issues will be denied on the merits. An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: January 26, 2006.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**HARRY L. BECKETT,** :
: 
  **Petitioner** : **CIVIL NO. 1:CV-03-1716**
:
**v.** : **(Judge Rambo)**
:
:
**KENNETH D. KYLER,** *et al.,* :
:
  **Respondents** :

## **O R D E R**

In accordance with the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

    1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**;

    2) The Clerk of Court is directed to **CLOSE** this case;

    3) There exists no basis for the issuance of a certificate of appealability.

                                          s/Sylvia H. Rambo
                                          SYLVIA H. RAMBO
                                          United States District Judge

Dated: January 26, 2006.